# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Sprint Corp. records of historical cellsite and GPS data<br>for Phone # 619-368-4096<br>IMEI # 352695107378359 | Case No. **21-MJ-1119** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ District of Kansas , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC secs. 952, 960 | Importation of Federally Controlled Substances |
| 21 USC Sec. 963 | Conspiracy to Import Federally Controlled Substances |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Alexander Askey, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ___ days *(give exact ending date if more than 30 days:* ___ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

*Alexander R Askey*
Applicant's signature

HSI Special Agent Alexander Askey
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 03/23/2021

*Daniel E Butcher*
Judge's signature

City and state: San Diego, California       Hon. Daniel E. Butcher, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

Sprint Corp. is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 6480 Sprint Parkway, Overland Park, Kansas 66251. Sprint Corp. hosts the electronic communication account associated with the telephone number **619-368-4096** and **IMEI 352695107378359** that is the subject of this search warrant and search warrant application (the "subject account").

# ATTACHMENT B

**I.** Service of Warrant

The officer executing the warrant shall permit the Provider in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.** Items to be Seized

Agents shall seize the following records, data, and information covering March 24, 2020 at 9:42AM UTC through July 15, 2020 at 9:50AM UTC and maintained by the Provider for the subject account identified in Attachment A:

  a. Subscriber information, including:
      i. Names;
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities; and
      viii. Means and source of payment (including any credit card or bank account number) and billing records.

  b. Records and other information about past wire or electronic communications sent or received by the subject account, including:

  i. the date and time of the communication;
  ii. the method of the communication;
  iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses;
  iv. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications;
  v. All available PCMD reports for March 24, 2020, to July 15, 2020

which are evidence of violations of 21 U.S.C. §§ 952, 960, 963 (importation of federally controlled substance and conspiracy to do the same).

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Alexander R. Askey, being duly sworn, state as follows:

1. This affidavit is in support of an application by the United States of America for a search warrant for Sprint Corp. at 6480 Sprint Parkway, Overland Park, KS 66251, as described in Attachment A, to search the account associated with the following cellular telephone number and International Mobile Equipment Identity ("IMEI") number:

**Phone # 619-368-4096**

**IMEI # 352695107378359**

(the "subject account") for subscriber information, telephone toll data, and cell-site geolocation data from March 24, 2020 to July 15, 2020. There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 21, United States Code Sections 952, 960, 963, as described in Attachment B. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, Sprint Corp. provides electronic communication services in the form of cellular and wireless telephone service for the subject account.

## EXPERIENCE & TRAINING

2. I am a Special Agent with Homeland Security Investigations (HSI). I have been employed as a Special Agent since October 2, 2016, and am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7). Prior to becoming a Special Agent, I served as a Police Officer with the City of Alexandria, Virginia, from December 2011 to August 2016. I earned a Bachelor of Arts degree in Administration of Justice and a Minor in Legal Studies from the University of Pittsburgh in 2011. Additionally, I earned a Master of Public Administration degree from Troy University in 2015. As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, Title 19 and Title 21 of the United States Code. Included in my responsibilities is the investigation of illicit

contraband-smuggling, including narcotics-smuggling, across the United States border. I have completed and graduated from the twelve-week Criminal Investigator Training Program as well as the fifteen-week Homeland Security Investigations Special Agent Training Program located at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed and graduated the Northern Virginia Criminal Justice Training Academy, located in Ashburn, Virginia. Since July 2017, I have been assigned to a HSI Contraband Smuggling Group in San Ysidro, California. My duties include investigating the illicit trafficking of controlled substances into the United States. During my assignment to the Contraband Smuggling Group, I have participated in the investigation of drug trafficking organizations involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California.

3. As part of my investigations of drug trafficking organizations, I have conducted interviews of dozens of individuals involved in narcotics importation. I have conducted surveillance in connection with narcotics smuggling and drafted dozens of search warrants to search the electronic devices related to narcotics trafficking. I have also reviewed the contents of electronic devices used to coordinate narcotics importation, including cellular telephones and GPS trackers. I have obtained warrants on historical and real time GPS data to further my investigations. I have worked with confidential human sources and cooperating defendants who have participated in drug trafficking organizations at all levels. I have had many conversations with these individuals about the methods used to import narcotics into the United States from Mexico.

4. In my training and experience, individuals who agree to import narcotics from Mexico into the United States oftentimes use a cellular telephone to coordinate with individuals in Mexico and the United States. I am aware that individuals first complete "dry runs" to establish a crossing history or get used to crossing the U.S.-Mexico border in a particular vehicle (also known as "burning plates"). I am aware that dry runs can occur

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-2-

several days to several weeks before a smuggling event occurs. These dry runs are coordinated via cellphone. Additionally, I am also aware that individuals who agree to import drugs use their cellphones to obtain driving directions to locations to drop off narcotics. Based on my training and experience, I am aware that it is a common practice for the driver crossing drugs into the United States to receive an address after crossing into the U.S. and then the driver will plug that address into a map application to receive directions. I am aware that the use of a cellphone for driving directions requires a device to connect to a cell tower.

5. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

## STATEMENT OF PROBABLE CAUSE

6. On July 15, 2020, Jeffrey Fitzhugh was the driver and sole occupant of a white Honda Ridgeline truck which entered the San Ysidro Port of Entry from Mexico. As Fitzhugh waited in primary lane 16 to be inspected for entry into the U.S., a trained Customs and Border Protection ("CBP") Canine Enforcement Officer ("CEO") noticed that his roving Narcotics/Human Detection Dog "Cerci" alerted to the exterior side of the rear cab wall of Fitzhugh's vehicle. A second CBP Officer responded and used a non-intrusive density reader on the rear tire, bumper, doors, and rear wall of the vehicle. The CBP Officer received a high density reading on the rear wall. Upon inspection, the CBP Officer discovered an area of carpet that appeared to have been torn or removed previously

AFFIDAVIT IN SUPPORT OF APPLICATION   -3-
FOR SEARCH WARRANT

which was located behind the rear seats of the vehicle on the rear wall. The CBP Officer observed that the area may have been tampered around the plastic that originally held the carpet in place. Using a flat-head screwdriver, the CBP Officer pulled back the carpet of the rear wall and observed cellophane-wrapped packages concealed in the rear wall of Fitzhugh's vehicle.

7. A third CBP Officer responded and spoke to Fitzhugh. Fitzhugh told this third officer that he was on his way to El Cajon Boulevard to work as an electrician. The third CBP Officer asked Fitzhugh if he was the sole operator of the vehicle and Fitzhugh replied that he parked the vehicle at a parking lot in Mexico and that he was the only one who drove the vehicle.

8. Based on the observations in pre-primary, the Honda Ridgeline was sent for further inspection. First, a Z-Portal operator screened the Ridgeline and observed anomalies between the rear seats and rear wall of the vehicle. The Z-Portal operator compared the crossing of the Ridgeline to a previous crossing on June 18, 2020, when the Ridgeline was referred to secondary. The Z-Portal operator saw similar anomalies between the rear seats and rear wall when comparing the June 18 and July 15 photos. No contraband was discovered on June 18, 2020. TECS records indicate that Fitzhugh was the driver of the Ridgeline on June 18, 2020. TECS records also indicate that beginning on March 24, 2020, Fitzhugh began crossing into the United States in the Ridgeline. Between March 24, 2020, and July 15, 2020, Fitzhugh drove the Ridgeline into the United States approximately 44 times. No other individual crossed the Ridgeline into the U.S. during this time. During this time period, Fitzhugh used no other vehicle to enter the U.S., and also did not have any pedestrian crossings.

9. In secondary inspection, a CBP Officer drove the vehicle to the Seized Contraband Coordinator and placed the Ridgeline on a vehicle lift. The CBP Officer removed the plastic of the rear wall through the bed of the truck, which exposed packages

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

-4-

concealed behind the rear wall, covered with non-factory carpet. The CBP Officer removed approximately 105 packages from the vehicle. Agents sent the packages to the DEA laboratory, and a trained chemist analyzed the contents. The DEA chemist concluded that the packages contained a total of 45.7 kilograms of methamphetamine (actual). The vehicle also contained California Department of Motor Vehicle registration information for the Ridgeline which listed Fitzhugh as the registered owner beginning on March 4, 2020.

10. Upon inspecting the vehicle, the CBP Officer also found the two cellphones in the Ridgeline. Fitzhugh claimed ownership of the two devices. Fitzhugh was arrested for importation of narcotics in violation of Title 21, U.S.C., Sections 952, 960, case no. 20-CR-3596-WQH.

11. I obtained search warrants for the two cellphones. One cellphone—an iPhone—appeared to have a telephone number associated with it from Mexico. The second cellphone—a Samsung Galaxy—had the subject account associated with it. I reviewed the content of the phone pursuant to Attachment B of the warrant. On July 14, 2020, Fitzhugh searched for the following address in Google on his Samsung device: "3425 Whittier Blvd, Los Angeles, CA 90023." I believe this is the location where Fitzhugh was planning to take his narcotics-laden vehicle if he had successfully crossed into the United States. A search of the subject account will confirm whether Fitzhugh had previously had his cellphone in this location, which tends to suggest prior successful crossings of narcotics.

12. In light of the above facts and my experience and training, there is probable cause to believe that the subject account may contain information associated with the movement of Fitzhugh within the United States after crossing the vehicle. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. It is unknown how long Fitzhugh was involved in importing controlled substances. Modifications to his vehicle were seen via Z-portal on June 18, 2020, but it is unknown

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-5-

when those were made. Coordinators of narcotics importation events may use the same driver on multiple occasions, and they may have the driver travel back and forth across the border to develop a normal crossing pattern. Based on my review of TECS records, Fitzhugh first began crossing the Ridgeline on March 24, 2020, and drove it across the U.S.-Mexico border as the registered owner a total of 44 times. Accordingly, I request permission to search the subject account for data beginning on March 24, 2020 up to and including July 15, 2020.

13.  I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks. This application requests such PCMD for the subject account for the following date and time range: March 24, 2020 at 9:42AM UTC through July 15, 2020 at 9:50AM UTC.

14.  Given these facts, I seek a warrant to search the subject account for the records and information in Attachment B.

<u>PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE</u>

15.  The United States is unaware at this time of other attempts by the U.S. government to obtain this data by other means.

_Alexander R Askey_
Alexander R. Askey
Special Agent
Homeland Security Investigations

Sworn and attested under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this <u>23rd</u> day of March 2021.

_Daniel E Butcher_
HONORABLE DANIEL E. BUTCHER
UNITED STATES MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-6-